# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| COMRED WILLIAMS | CIVIL ACTION NO. 07-2148 |
| VS. | SECTION P |
| INVESTIGATOR FRANK JONES, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on December 12, 2007 by *pro se* plaintiff Comred Williams. Plaintiff is a pre-trial detainee in the Richland Parish Detention Center, Rayville, Louisiana; he is awaiting trial on rape charges pending in the Fifth Judicial District Court, Richland Parish.  He complains that he was the victim of an unlawful search and seizure of his home and his person by deputies of the Richland Parish Sheriff's Office (RPSO). He names Investigator Frank Jones and other unidentified deputies of the RPSO as defendants and he prays that the forcible rape charges pending against him be dismissed or "reduced." He also prays for compensatory damages for "emotional stress, humiliation, willful negligence, forcible strip search, exploration of my private parts, the shame and the likes" based upon the defendants' violations of his Fourth Amendment rights.  In an amended complaint he implies that he has been falsely arrested and imprisoned and maliciously prosecuted and he implies that the original defendants, along with the District Attorney and his Assistant, Judges of the Fifth Judicial District Court, and, his court-appointed attorney are liable to him for these violations of his civil rights.

This matter has been referred to the undersigned for review, report, and recommendation

in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE**.

*Statement of the Case*

*1. Original Complaint  [doc. 1]*

In his original complaint filed on December 12, 2007, plaintiff alleged the following: On February 7, 2007, at 2:56 a.m., Investigator Frank Jones and several unidentified deputies of the Richland Parish Sheriff's Office arrived at plaintiff's residence and ordered him outside where he was searched and handcuffed. He was then returned to his home where he observed the deputies searching every room and closet.  According to plaintiff, this search was not authorized by a search warrant; nor did he give his permission.  Jones refused to answer any of plaintiff's questions.  While the search was being conducted, a deputy photographed the apartment.  Certain tools, towels, and other personal items were seized.  According to plaintiff, subsequent DNA tests proved negative.

Plaintiff was taken into custody and his home was left unlocked.  When plaintiff was taken inside the police station, he was forced to remove his trousers.  A deputy photographed plaintiff's genitalia.  According to plaintiff, this too, was accomplished without a warrant. Meanwhile, Investigator Jones "began laughing as to humiliate" plaintiff.

Plaintiff asked the investigator for permission to contact his family to request that they lock up and secure his home.  His request was granted.

Plaintiff was charged with forcible rape and his family retained the services of an attorney to represent him.  On June 29, 2007, the victim of the alleged rape executed an affidavit in which

she stated that her previous accusatory allegations were false.  Nevertheless, the charges remain pending.

### 2. Amended Complaints and Exhibits

On March 17, 2008, the undersigned completed an initial review and directed plaintiff to amend the complaint to provide additional information. [doc. 7] On April 21, 2008, and again on April 29, 2008, plaintiff amended his complaint and provided copies of various court documents and transcripts. [docs. 9 and 11]

In the first amended complaint, filed on April 21, 2008, plaintiff alleged that there was no probable cause to charge him with forcible rape and therefore the charges were dismissed; he further declared that there was no timely probable cause determination and that was another reason for the dismissal of the forcible rape charge.  Plaintiff accused Investigator Jones of perjury and of conspiracy.  He accused his attorney of leaking "vital information to the D.A." which resulted in counsel being relieved of his obligation to represent plaintiff in the criminal trial pending in the Fifth Judicial District Court. [doc. 9, p. 1]

Plaintiff also included copies of the court minutes.  According to the minutes, plaintiff was arraigned on a charge of forcible rape on April 4, 2007, in the case under Docket Number 2007-F-76.  At that time he was determined to be indigent and Carey Ellis was appointed to represent him.  On May 2, 2007, plaintiff appeared for a pre-trial conference; at that point Ellis was relieved and Darrell Oliveaux enroled as counsel of record. On June 13, 2007, the forcible rape charges were dismissed.  [doc. 9, p. 2]

Plaintiff also included the October 3, 2007, affidavit of Investigator Frank Jones charging one Harmon M. Harris with obstruction of justice.  According to the affidavit, Harris told

3

plaintiff's accuser that if she did not drop the charges against plaintiff, then plaintiff would retaliate by doing her bodily harm upon his release from jail. [doc. 9, p. 3]

Plaintiff also included Investigator Jones's affidavit of probable cause regarding the rape charges.  According to the affidavit, plaintiff was arrested on February 7, 2007, at 2:13 a.m. and charged with aggravated rape based on the statement of the victim that plaintiff threatened her with a kitchen knife and an object that looked like a crowbar and then pushed her down on a couch where he forced the victim to perform oral sex on him.  This affidavit was presented to Judge Roberts who found probable cause to charge plaintiff with aggravated rape on February 8, 2007, at 2:25 p.m. [doc. 9, pp. 4-5]

Plaintiff also included a copy of the Bill of Information filed on March 27, 2007, charging plaintiff with aggravated rape on February 6, 2007  [doc. 9, p. 7] and a Bill of Information charging plaintiff with forcible rape which was filed on April 4, 2007 [doc. 9, p. 8].

On April 29, 2008, plaintiff filed a second amended complaint. [doc. 11] Therein he alleged that "... deputies, Investigator Jones, the D.A., Carey Ellis, all of the little cosey [sic] family of Richland (Parish) has cover-up [sic] with lies, the truth that's beneath them..." He alleged that Investigator Jones has committed perjury and malfeasance in office by directing other officers to participate in his unconstitutional and unlawful actions.  He alleged that Jones violated plaintiff's rights "... by executing an illegal search without a search warrant and executing it at night..."  He claimed that the District Attorney "... has avoid [sic] an untimely arraignment by amending the charge of Agg. Rape to Forced Rape, then the next month dismisses the forced rape..." [doc. 11, pp. 1-2] He accused his court–appointed attorney of breaching the attorney-client privilege and providing information to the District Attorney which

4

resulted in plaintiff being charged with obstruction of justice based on allegations that plaintiff bribed or threatened the complainant to drop charges.  He accused the prosecutor of threatening him with having to serve 40 years unless he agreed to plead guilty.  [doc. 11, pp. 2-3]  He accuses the prosecutor of unprofessional conduct because he "... is always amending, correcting, re-arraigning, dismissing his mistakes..." [doc. 11, p. 4]  Plaintiff attached numerous documents to his amended complaint, including: a copy of the Bill of Information charging forcible rape filed on April 4, 2007 which mistakenly spells plaintiff's name, "CONRAD" [doc. 11-2, p. 2];  a copy of the Bill of Information charging aggravated rape filed  on March 27, 2007 which also mistakenly spells plaintiff's name, "CONRAD" [doc. 11-2, p. 3]; photographs of the plaintiff [doc. 11-2, p. 7]; photographs of the interior of plaintiff's residence [doc. 11-2, pp. 9-10]; the transcript of the motion to suppress and motion for bond reduction held in the Fifth Judicial District Court on April 9, 2008 [doc. 11-2, pp. 21-30, doc. 11-3, pp. 1-30, and doc. 11-4, pp. 1-51]; an affidavit of probable cause executed by Investigator Frank Jones, Jr. and the February 8, 2007, order of Judge Glynn D. Roberts finding probable cause based on the facts alleged in the affidavit [doc. 11-4, pp. 57-59]; court minutes from April 4, 2007, May 2, 2007, and June 13, 2007 [doc. 11-4, p. 61]; and, court minutes from May 17, 2007, June 13, 2007, August 8, 2007, October 3, 2007, November 14, 2007 [doc. 11-4, pp. 65-66].

### *Law and Analysis*

### *1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and his amended complaints and exhibits recite the facts relied upon

6

to support his specific theories of liability.  Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that the plaintiff's claims are frivolous, fail to state claims for which relief might be granted, or seek damages against defendants who are immune from suit.

## 2. Warrantless Search and Seizure

In his original complaint, plaintiff complained only that he was the victim of a warrantless search and seizure.  The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. Generally, a search or seizure without probable cause or warrant is a violation of the Fourth Amendment. See *United States v. Jones*, 234 F.3d 234, 239 (5th Cir.2000).  Plaintiff contends that the warrantless search of his residence, the seizure of various items of personal property and the subsequent warrantless strip search of his person were violative of the Fourth Amendment's proscription against unreasonable searches and seizures.

A warrantless search is unreasonable if officers lacked probable cause to conduct the search. Probable cause for a search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *United States v. Saucedo-Munoz*, 307 F.3d 344, 351 (5th Cir.2002)(citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause must be determined from the totality of the circumstances, an evaluation of what a reasonable officer could believe must include not just the facts and circumstances of which the officer has personal knowledge, but also those of which he has reasonably trustworthy

7

information. See *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir.1983).

Plaintiff's allegations are taken as true for the purposes of an initial review conducted pursuant to 28 U.S.C. §§1915 and 1915A. Nevertheless, taken as a whole, plaintiff's allegations, even if accepted as true, establish only that the complained of searches and seizures were conducted without a warrant; plaintiff has nowhere alleged that the searches were conducted without probable cause or were otherwise unreasonable, and the exhibits tendered by the plaintiff, specifically, the transcript of the motion to suppress hearing [see doc. 11-2, pp. 21-30, doc. 11-3, pp. 1-30, and doc. 11-4, pp. 1-51] establish that Investigator Jones and his fellow officers were invited into plaintiff's residence and only then did they observe items of evidence that were in plain view and thus subject to seizure. In addition, the evidence submitted by the plaintiff also establishes that the victim advised officers that the man who raped her had recently shaved his pubic hair.[1] Plaintiff is unable to establish that the officers lacked probable cause to conduct the complained of searches; nor has he shown that these searches were unreasonable. Thus, plaintiff has failed to state a claim for which relief might be granted.

Likewise, his claim that he remains illegally incarcerated despite the alleged recantation by the victim is without factual support. According to the transcript and other exhibits, the victim did indeed sign an affidavit recanting her complaint; however, at the hearing on the

---

[1] The officers testified that the victim, who knew the plaintiff, identified him as her assailant. She also advised that the rape had occurred in his residence and she described the weapons that plaintiff armed himself with. The victim also advised that her assailant had shaved his pubic area. [doc. 11-2, pp. 25-30]

According to the officers, they approached plaintiff to advise him about the complaint; they advised him of his rights; and he invited them to enter his residence. While inside the residence, the officers observed the weapons described by the victim in plain view. [see doc. 11-3, pp. 1-7] The officers asked if they could "look around" and plaintiff told them to "Go ahead." [doc. 11-3, p. 7] According to the officers, plaintiff at no time denied them entry into the residence and at no time did he direct them to leave the residence. [doc. 11-3, p. 13]

motion to suppress, she testified that she did so because plaintiff and those acting on his behalf bribed her with payments of cash to do so.  She then reiterated her complaint against the plaintiff and repudiated her recantation. [doc. 11-4, pp. 39-49]

To the extent that plaintiff contends that he was falsely arrested, falsely imprisoned, and maliciously prosecuted, such allegations are actionable only if plaintiff can establish that the defendants lacked probable cause to support his arrest, incarceration, and prosecution.  See *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001) ("The 'constitutional torts' of false arrest ... and false imprisonment ... require a showing of no probable cause.").  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001).  Whether plaintiff is ultimately determined to be guilty of rape or any other offense is of no moment.  The key issue is whether probable cause supports his arrest, incarceration, and prosecution.  As shown above, there is ample evidence to establish probable cause and therefore plaintiff's civil rights suit must fail.

Finally, plaintiff points to various defects in the State court proceedings as grounds for his civil rights claims.  For the most part, his complaints, to the extent that they allege violations of the law, allege violations of Louisiana law and not federal law.  However, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### 3. Habeas Corpus claims

9

Additionally, to the extent that plaintiff seeks dismissal of the pending charges, such relief may not be granted by a federal court either in the context of a civil rights suit, nor generally in the context of a *habeas corpus*, where, as here, a state detainee seeks federal court intervention in an on-going state criminal prosecution.

Plaintiff is a pre-trial detainee who is challenging a pending Louisiana state court criminal prosecution. Title 28 U.S.C. § 2241 provides the appropriate vehicle to challenge an on-going state prosecution. *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 378 (1987). With regard to *habeas corpus* petitions filed under 28 U.S.C. §2241 by pre-trial detainees, there is no express statutory requirement that the detainee exhaust state court remedies prior to asserting his claims in federal court. However, a body of jurisprudential law requires persons seeking such relief pursuant to §2241 to first exhaust state court remedies before seeking federal intervention. *Dickerson*, 816 F.2d at 224-225; *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489-90, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Robinson v. Wade*, 686 F.2d at 303, n. 8 ("Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.")

Furthermore, a federal court should abstain from the exercise of jurisdiction if the issue raised by a pre-trial detainee in a *habeas* petition may be resolved either by a trial on the merits in the state court or other state court proceedings. *Dickerson*, 816 F.2d at 225, citing *Braden*, 410 U.S. at 489-92, 93 S.Ct. 1123 at 1126-28. These requirements are imposed to preclude "the derailing of a pending state proceeding by an attempt to litigate constitutional defenses

prematurely in federal court."  *Braden,* 410 U.S. at 493, 93 S.Ct. at 1129; *Dickerson,* 816 F.2d at 225-226.

The nature of the remedy sought provides a further distinction.  The jurisprudence distinguishes between a petitioner who seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes"  from one who seeks only to enforce the state's obligation to bring him promptly to trial.  *Dickerson*, 816 F.2d at 225.  In *Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir.1976),  the Fifth Circuit articulated the distinction:

> [A]n attempt to dismiss an indictment or otherwise prevent a prosecution is of the first type, while an attempt to force the state to go to trial is of the second. While the former objective is normally not attainable through federal *habeas corpus*, the latter is, although the requirement of exhaustion of state remedies still must be met.

*Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir.1976).

Plaintiff's  alternative  prayer for relief establishes beyond any doubt that he seeks dismissal of the charges pending in the Fifth  Judicial District Court and his immediate release from custody.  He is not entitled to such relief pursuant to §1983 and, further, he is not entitled to such relief pursuant to §2241 under the circumstances alleged. See *Brown v. Estelle*, 530 F.2d at 1283.

Finally, to the extent that plaintiff might somehow be entitled to *habeas corpus* relief pursuant to §2241, the pleadings and exhibits, along with Louisiana's published jurisprudence establish that he has not exhausted available state court remedies with respect to the constitutional claim raised herein.  As noted above, this court is without authority to order the dismissal of the charges and therefore, to the extent that plaintiff seeks release from custody, his complaint fails to state a claim for which relief may be granted.

### 5. *False Arrest, Imprisonment and Malicious Prosecution and Heck v. Humphrey*

In the original complaint, plaintiff implied that he was falsely arrested, that he was being falsely imprisoned, and that he was the victim of a malicious prosecution by virtue of the fact that the victim of the alleged offense had dropped all charges.  In his amended complaint he implied that he had been falsely arrested and imprisoned and that he was the victim of  malicious prosecution as a result of what was implied to be a conspiracy involving the judges of the Fifth Judicial District Court, the District Attorney and his assistant, the investigating officers, and petitioner's original court-appointed counsel.  For the most part, these claims are unsupported by the record submitted thus far. Plaintiff has filed numerous court documents which he claims prove his allegations; however, upon closer inspection, there is little basis in fact for the claims. For the most part, plaintiff points to the misspelling of his given name on various law enforcement and court documents, erroneous dates written by law enforcement officials on such documents, minor discrepancies in court testimony and law enforcement reports, the dismissal and reinstatement of charges, and other such errors to support his claim of actual innocence and to prove his implied claims of conspiracy, false arrest and imprisonment, and malicious prosecution. [see doc. 11-2, pp. 2-3; doc. 11-4, pp. 57-59]  At best, plaintiff's claims are conclusory in nature and are subject to dismissal for failure to state claims upon which relief might be granted.[2]  Further, as shown above, there is ample evidence to establish probable cause

---

[2] For example, he alleged there was no timely probable cause determination, however, the document he uses to support this claim is at best, ambiguous [doc. 11-4, pp. 57-59], and, in light of the affidavit filed in the criminal record, there can be no question but that probable cause existed for plaintiff's arrest, incarceration, and prosecution, because, as shown above, the victim positively identified plaintiff as the perpetrator of the crime. [doc. 9, pp. 4-5] He also accused the investigating officers of perjury, but that claim is clearly conclusory and unsupported by any factual allegations. He accused his court-appointed attorney of leaking vital information to the prosecution, but he failed to

12

for plaintiff's arrest, imprisonment, and prosecution; therefore, even if plaintiff is ultimately exonerated, his complaint fails to state a claim for which relief may be granted since in order to prevail, he must show that his arrest, incarceration, and prosecution proceeded without probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001).

Further, these claims, unlike his illegal search claims,[3] are also subject to dismissal under the rationale of *Heck v. Humphrey*.  In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held:

> ... in order to recover damages for allegedly unconstitutional conviction or imprisonment or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of writ of *habeas corpus*, 28 U.S.C. § 2254...

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, at 486-487.

In essence, *Heck* prohibits the use of § 1983 complaints as a means of collaterally

---

describe the so-called vital information. [doc. 9, p. 1] He accused the various defendants of engaging in "lies" and "cover-ups" and "perjury" and "malfeasance" but other than these conclusory accusations, he points to nothing in the record to support such claims.

[3] In *Heck v. Humphrey*, 512 U.S. at 487, n. 7, 114 S.Ct.  2364, the Court specifically noted, " [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."

attacking outstanding state convictions.  While other circuits have applied *Heck* to bar civil rights suits which call into question the validity of pending criminal charges [see *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1998), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998); *Smith v. Holtz*, 87 F.3d 108, 113 (3rd Cir. 1996); *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 898 n. 8 (7th Cir.2001);  *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 397-98 (6th Cir.1999); *Covington v. City of New York*, 171 F.3d 117, 124-25 (2d Cir.1999); *Uboh v. Reno*, 141 F.3d 1000, 1006-07 (11th Cir.1998); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir.1999); *Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000)], the Fifth Circuit has opted for a more cautious approach.[4]  In *Mackey v. Dickson*, 47 F.3d 744 (5th Cir. 1995) the court was confronted with a civil rights complaint alleging an illegal arrest.  Based upon the pleadings before the court, the Fifth Circuit concluded that at the time he filed his civil rights complaint, Mackey was still awaiting trial on the complained of charges. The matter came before the Fifth Circuit on the plaintiff's appeal of the district court's *sua sponte* dismissal of his civil rights claims based upon  *Heck*.  The Fifth Circuit noted, the "... district court held that, to the extent Mackey sought tort damages in his section 1983 action, his claim was not actionable unless and until the validity of his conviction is called into question and

---

[4] *Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996) has been cited in numerous district court cases arising as "...interpreting *Heck* to prevent accrual of § 1983 claims that would necessarily imply the invalidity of convictions on pending criminal charges." See *Williams v. Reynolds*, 2004 WL 1585881 (N.D.Tex. 7/31/2004); *McMillen Nunley*, 2003 WL 22227863 (N.D.Tex. 9/25/2003); *Martinez v. McMullen*, 2003 WL 22083626 (N.D.Tex. 9/8/2003); *Tinney v. Tarrant County Sheriff's Dept.*, 2002 WL 32332834 (N.D. Tex. 11/5/2002); *Parker v. Moreno*, 2002 WL 1758181 (N.D.Tex. 7/26/2002); *Mamoth v. Dallas County Mun. Court*, 2002 WL 1331995 (N.D.Tex. 6/13/2002); *Martinez v. Texas Dept. of Protective and Regulatory Services*, 2002 WL 83748 (N.D.Tex. 1/14/2002); *Ramos v. Texas Dept. of Protective and Regulatory Services*, 2001 WL 1658085 (N.D.Tex. 12/21/2001); *Tucker v. Dallas Police Dept.*, 2001 WL 1658098 (N.D.Tex. 12/21/2001); *Escamilla v. Dallas Police Dept.*, 2001 WL 1338302 (N.D.Tex. 10/18/2001); *Patterson v. City of Terrell*, 2001 WL 305844 (N.D.Tex. 3/29/2001).  However, *Hamilton* clearly does not involve the application of *Heck* to pending criminal charges.  See *Hamilton* at 103-104, "If we were to find that Lyons coerced Hamilton to give a statement concerning the charges pending against him, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges."

therefore dismissed his claim." *Id.* Thereafter, the court concluded,

> The record <u>does not clearly reflect</u> that a successful attack on Mackey's arrests
> will implicate the validity of his confinement. It <u>is not clear</u> whether or not
> Mackey has been tried or convicted. When his suit was filed, it appears that he
> was confined pursuant to the March 21 indictment, the validity of which would
> not necessarily be implicated by any illegality in earlier arrests. If Mackey is tried
> and convicted and in his contested criminal case no evidence is presented
> resulting directly or indirectly from any of his arrests, it is difficult to see how any
> illegality in any of his arrests could be inconsistent with his conviction. On the
> other hand, if he is convicted and evidence is presented by the prosecution at his
> criminal trial which is a direct or indirect product of one or more of his arrests,
> then his section 1983 damage claims challenging the validity of his arrests would
> appear to undermine the validity of his conviction and hence be barred by *Heck*...
> At this point <u>it is simply premature to determine whether or not Mackey's damage
> claims are barred under *Heck*</u>. Accordingly, the district court erred in dismissing
> the claims on the basis of *Heck*. The court may – indeed should – stay proceedings
> in the section 1983 case until the pending criminal case has run its course, as until
> that time it may be <u>difficult to determine</u> the relation, if any, between the two.

*Id.* at 746. (emphasis supplied)

In *Guillory v. Wheeler*, 303 F.Supp.2d 808 (M.D.La. 2/6/2004), the district court was

confronted with a similar scenario, articulated by the court as follows, "Plaintiff alleged in his

complaint that during an incident which occurred on August 31, 2002, he was verbally and

physically assaulted, without provocation, by defendant Dwayne Wheeler, a police officer

employed by the Village of Slaughter. Plaintiff further alleged that, in an attempt to cover up his

beating of the plaintiff, Wheeler accused the plaintiff of the crime of simple battery of a police

officer...  Plaintiff alleged that Slaughter police officer Hamp Guillory, along with Wheeler,

prepared a false police report which they knew would be relied upon by the prosecuting attorney.

Plaintiff was subsequently charged with the crime of battery on a police officer, which charge is

still pending." *Guillory v. Wheeler*, 303 F.Supp.2d at 809.  Relying on *Heck*, the defendants

moved for a stay of the proceedings pending the outcome of the on-going criminal prosecution.

The court then discussed the applicability of *Heck* to a pending criminal prosecution:

> Technically, *Heck* does not apply because the plaintiff has not been convicted, sentenced or imprisoned. Nonetheless, applying the *Heck* rationale to a pending conviction makes good sense as the court in [*Smith v. Holtz*, 87 F.3d 108, 113 (3rd Cir.1996)] explained, 'The Supreme Court in *Heck* balanced the principles and interests of section 1983 claims and the federal *habeas corpus* statute by holding that a section 1983 action is not the appropriate vehicle for challenging the validity of convictions and sentences. The express objectives of the Court's holding were to preserve consistency and finality, and to prevent a collateral attack on a conviction through a civil suit.' *Smith*, 87 F.3d at 113 (internal citations omitted). The *Smith* court then found that 'these concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge.' *Id.* The court reasoned that if a civil action by a defendant in an ongoing criminal prosecution could proceed, there would be a potential for inconsistent determinations in the civil and criminal cases, and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. 'In terms of the conflict which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.' *Id.* Because of these concerns, the court held that 'a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under section 1983.' *Id.*

> The thrust of *Heck* is to bar civil actions which, if decided favorably to the plaintiff, would necessarily imply the invalidity of the prior conviction or sentence. When the section 1983 plaintiff has not yet been tried or convicted, then a favorable determination in the civil action would necessarily imply the invalidity of a subsequent conviction, and the *Heck* rationale should be applied. The *Heck* rationale bars a criminal defendant from seeking in a section 1983 case a determination of the alleged unlawfulness of actions which would render not only a prior conviction, but also a subsequent conviction invalid.

> Furthermore, prohibiting the plaintiff from proceeding with his section 1983 claims prior to the resolution of the pending criminal charge prevents the plaintiff from obtaining through discovery in the civil action information he could not obtain in the criminal case. For example, if this case were to proceed and the plaintiff conducted discovery, he could serve interrogatories and document requests on the defendants and take their depositions. No doubt those discovery devices would be used to uncover information which would likely be relevant and admissible in evidence at the criminal trial. However, such discovery devices are

not available to the plaintiff as a defendant in the criminal case.

*Guillory v. Wheeler*, 303 F.Supp.2d at 810.

The court then looked to the Fifth Circuit's analysis in *Mackey* and noted, "Although not clear, it appeared that plaintiff Mackey had been confined after his indictment but had not yet been tried or convicted.  Consequently, the court could not determine whether *Heck* would, or would not apply." *Guillory*, at 810-911.  The court then concluded, "Similarly to *Mackey*, the court cannot determine at this time how the plaintiff's excessive force claim would be affected by a criminal conviction."  The district court then stayed the proceedings pending the resolution of the state criminal charges.

In *Bush v. Strain*, 2004 WL 1158038 (E.D.La. 5/24/2004), simple battery and resisting arrest charges were still pending against the civil rights plaintiff when she filed her § 1983 complaint seeking damages for the alleged beating she received at the hands of the arresting officers. The defendants filed a motion to dismiss arguing that plaintiff's claims were barred by *Heck*.  Plaintiff opposed the motion and argued that *Heck* did not apply since she had not yet been convicted. *Bush v. Strain*, at *1 -2.

The court observed that "The Fifth Circuit Court of Appeals in *Mackey v. Dickson*, 47 F.3d 744 (5th Cir. 1995) appears to have addressed the *Heck*-bar in the context of pending charges. Although it is not clear, it appears that the plaintiff Mackey had been confined after his indictment but had no yet been tried or convicted. Consequently, the court could not determine whether *Heck* would or would not apply." *Bush*, at *3.  Then, citing *Guillory v. Wheeler, supra*, the court noted that in that case, "...the issue of *Heck's* applicability to pending criminal charges was addressed, albeit in the context of a defense motion to stay further proceedings on Guillory's

§ 1983 false arrest and excessive force claims pending the resolution of the criminal charge for

battery of a police officer.  Noting out-of-circuit precedents holding that *Heck* applies to potential

convictions on pending criminal charges, Guillory observed that, while *Heck* technically does not

apply because the plaintiff has not been convicted, sentenced or imprisoned, it makes good sense

to apply the rationale to a pending conviction.  Nevertheless, the *Guillory* court opted to steer the

course 'strongly suggested by the Fifth Circuit Court of Appeals' and stayed the proceedings

until the pending criminal case was finally determined." *Bush* at *3.

    The court then concluded that in determining whether *Heck* should apply to pending

criminal charges,  "...the district court must look to the facts of the specific case at hand to

determine whether a victory in the 1983 suit would impact the pending retrial or potentially lead

to inconsistent results. [citation omitted]  If no such conflict exists under the facts of the case,

then the 1983 suit should go forward. [citation omitted]  Where doubts exist, however, the

district court has the discretion to stay the civil suit while the state criminal trial goes forward.

[citation omitted]" *Id.*

    Based on the foregoing, the undersigned concludes that the *Heck* analysis does in fact

apply to bar civil rights suits which call into question the validity of pending criminal charges.

The undersigned also concludes that the Fifth Circuit's cautious approach, that is, the use of a

stay as opposed to a dismissal, has been deemed appropriate in those instances where there exists

uncertainty as to whether a victory in the civil rights suit would impact the pending criminal

prosecution.  Finally, the undersigned has also concluded that dismissal of the civil rights suit is

an appropriate response when it is clear beyond any doubt that the plaintiff's victory in his civil

rights claim would necessarily implicate the validity of the pending criminal charges and of the

civil rights plaintiff's arrest, prosecution and continued incarceration.

In the instant case, the plaintiff contends that  he is actually innocent of the charge that is pending against him.  He seeks monetary damages for having been "falsely accused," and  falsely arrested and imprisoned by law enforcement personnel, and maliciously prosecuted by the District Attorney with the assistance of the District Judges and his court-appointed lawyer.  He seeks monetary damages and dismissal of the pending rape charges.  Under such circumstances, it is absolutely clear that his success in this suit would necessarily implicate the validity of the arrest, incarceration, and prosecution on the pending charges since a ruling by this court in petitioner's favor would call into question the previous probable cause findings of the Fifth Judicial District Court and necessitate plaintiff's release from custody, relief, which is, as shown above, unavailable through a civil rights proceeding.  Thus, the undersigned concludes that the instant complaint need not be stayed; instead,  plaintiff's claims should be dismissed with prejudice to their being asserted again until the *Heck* conditions are met.  See *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

## 6. Judicial and Prosecutorial Immunity

To the extent that plaintiff implies that he is entitled to damages from the District Attorney or his Assistant District Attorney, such a claim is barred by the doctrine of absolute prosecutorial immunity.  A district attorney and his assistants are absolutely immune in a civil rights suit for any action taken pursuant to their role as prosecutors in preparing for the initiation of judicial proceedings and in presenting the State's case. See *Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir.1997).

19

Plaintiff's claim against the District Attorney and his assistant  is based on their conduct as state's advocates and they are therefore entitled to absolute prosecutorial immunity.  See *Imbler*, 424 U.S. at 430 (absolute immunity protected prosecutor from suit for knowingly using perjured testimony and suppressing material evidence at plaintiff's murder trial).

Plaintiff's implied claims against the Judges of the Fifth Judicial District likewise arise out of the performance of their judicial duties.  Judges have absolute immunity for acts done within the scope of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).  The Fifth Circuit has delineated three elements to identify acts as being judicial in nature, and thus not in the clear absence of all jurisdiction: "(1) normal judicial functions that (2) occurred in the judge's court or chambers and were (3) centered around a case pending before the judge." *Eitel v. Holland*, 787 F.2d 995, 998 (5th Cir.1986).  These factors are construed liberally in favor of immunity. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985). Plaintiff does not allege that the judges' actions occurred outside of either their chambers or the court, or that they were not centered around a case pending before them.  Thus, according to *Eitel*, the actions of the judges in question were within their jurisdiction and they enjoy absolute immunity from plaintiff's claims.

Consequently, even liberally construing plaintiff's claims against the prosecutors and judges of the Fifth Judicial District, they are without an arguable basis in law and should be dismissed with prejudice as frivolous. See *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir.1995) (affirming dismissal of action that had found judge immune and the action thus frivolous).

### 7. State Actor

Finally, plaintiff appears to have named his court-appointed counsel as a defendant.

"[Section] 1983 is not itself a source of substantive rights; it merely provides a method for

vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d

521, 525 n. 3 (5th Cir.1999). "To state a claim under § 1983, a plaintiff must allege the violation

of a right secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed <u>by a person acting under color of state law</u>." *West v. Atkins*,

487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)(emphasis supplied).

Plaintiff's court-appointed criminal defense attorney, is not a "state actor" and cannot be

sued for civil rights violations under 42 U.S.C. § 1983. See *Polk County v. Dodson*, 454 U.S.

312, 324-25, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). Consequently, plaintiff's claim lacks an

arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104

L.Ed.2d 338 (1989).

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint, insofar as it is based

upon an allegedly illegal search and seizure be **DISMISSED WITH PREJUDICE** for failing to

state a claim for which relief might be granted;

**IT IS FURTHER RECOMMENDED** that plaintiff's civil rights complaint, insofar as it

alleges false arrest, imprisonment and prosecution be **DISMISSED WITH PREJUDICE** (to

their being asserted again until the *Heck v. Humphrey* conditions are met) as frivolous and for

failing to state a claim on which relief may be granted  pursuant to the provisions of 28

U.S.C.1915(e)(2).

**IT IS FURTHER RECOMMENDED** that plaintiff's civil rights complaint, insofar as it

seeks monetary relief from the District Attorney, his Assistant District Attorney, and/or the

Judges of the Fifth Judicial District Court be **DISMISSED WITH PREJUDICE** for seeking monetary relief against defendants who are immune from such relief;

      **IT IS FURTHER RECOMMENDED** that plaintiff's civil rights complaint, insofar as it seeks judgment against plaintiff's court-appointed attorney, be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted since said party is not a "state actor" as defined by 42 U.S.C. §1983.

      Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

      **Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

      In Chambers at Monroe,  Louisiana, this 16th day of May, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE